IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SECOND STATE ENTERPRISES,** : **INC., BERNARD L. WASHABAUGH II,**: **and PJ 13, LLC,** : : **Plaintiffs,** : : v. : : **MID-ATLANTIC INVESTMENTS,** : **LLC,** : : **Defendant.** : | **CIVIL ACTION NO. 1:14-CV-00433** **(Chief Judge Conner)** |

**MEMORANDUM**

Plaintiffs Second State Enterprises, Inc. ("Second State"), Bernard L. Washabaugh II ("Washabaugh"), and PJ 13, LLC ("PJ 13") filed the instant action, seeking a declaratory judgment on certain rights and responsibilities under PJ 13's Operating Agreement ("PJ 13 Operating Agreement").  Presently before the court is defendant Mid-Atlantic Investments, LLC's ("Mid-Atlantic") motion to dismiss PJ 13 as a dispensable party pursuant to Federal Rules of Civil Procedure 19(b) and 21. (Doc. 2).  For the reasons that follow, the court will grant the motion.

I.      **Factual Background and Procedural History**

The instant action arises out of a dispute between Second State and Mid-Atlantic regarding the parties' rights and obligations under the PJ 13 Operating Agreement dated July 15, 2008.  The PJ 13 Operating Agreement governs a joint venture relationship between Second State and Mid-Atlantic to design, construct,

finance, operate, manage, and ultimately sell a hotel located in Martinsburg, Berkley County, West Virginia. (Doc. 1, Ex. A ¶ 1).

    **A.**    **Parties**

Plaintiff Second State is a Pennsylvania close corporation with its principal place of business in Chambersburg, Pennsylvania. (Id. ¶ 3). Plaintiff Washabaugh is a resident of Pennsylvania and currently serves as the President of Second State and a Manager of PJ 13. (Id. ¶¶ 1, 4). Defendant Mid-Atlantic is a Minnesota limited liability company with its principal place of business in Chanhassen, Minnesota. (Id. ¶ 6). Mid-Atlantic's sole member is Northcott Hospitality, LLC, a Minnesota limited liability company, whose members are three separate trusts created for the benefit of Rhonda N. Fowler, Melanie M. Nelson, and Melinda N. Pfohl pursuant to that certain Trust Agreement dated January 20, 1978, by and among Wyman D. Nelson, as Trustor, and Reynold M. Anderson, Richard S. Taylor, Howard S. Cox, and National Bank of South Dakota, as Trustees. (Doc. 8 at 3). None of the current trustees are residents of Pennsylvania. (Id.) On July 15, 2008, Second State and Mid-Atlantic formed PJ 13, a Pennsylvania limited liability company, in which each party holds a 50% membership interest. (Doc. 1, Ex. A ¶¶ 5, 16).

    **B.**    **Joint Venture**

In April 2007, Second State obtained an option to purchase real property located in Martinsburg, West Virginia for the purpose of developing a hotel on the premises. (Id. ¶¶ 13-14). In early 2008, AmericInn International, LLC ("AI") contacted Washabaugh regarding a plan to expand its hotel chain into the region.

(Id. ¶¶ 12, 15). For approximately six months, AI and Second State negotiated a joint venture agreement and decided to use PJ 13 to construct and operate a new hotel near Martinsburg, West Virginia. (Id. ¶¶ 15-16). On July 15, 2008, Second State, Mid-Atlantic, which is a wholly-owned subsidiary of AI, and the newly formed PJ 13 entered into the PJ 13 Operating Agreement. (Id. ¶ 17).

### C.     PJ 13 Operating Agreement

Pursuant to the PJ 13 Operating Agreement, Second State contributed an assignment of the purchase agreement for the real property and Mid-Atlantic contributed the purchase price of $800,000 to PJ 13. (Id. ¶ 22). Second State and Mid-Atlantic agreed that PJ 13 would develop and construct a three-story, seventy-three-unit AmericInn Lodge & Suites Hotel ("Hotel"). (Id. ¶ 18). Thereafter, PJ 13 would operate and manage the Hotel and ultimately sell the Hotel together with an assignment of a long-term management agreement with Three Rivers Hospitality, LLC, a wholly-owned subsidiary of AI. (Id.)

The PJ 13 Operating Agreement provides that, as long as Second State and Mid-Atlantic each hold a 50% membership interest, then each party is entitled to appoint one manager. (Id. ¶ 20). The initial managers were Washabaugh and Arnold N. Angeloni, CEO of Mid-Atlantic. (Id.) In December 2009, Mr. Angeloni stepped down as CEO of Mid-Atlantic and Manager of PJ 13. (Id. ¶ 21). The parties dispute whether Mid-Atlantic properly designated new CEO, Paul S. Kirwin, as replacement manager for PJ 13. (See id.; Doc. 8 at 2).

The PJ 13 Operating Agreement also divided certain tasks between Second State and Mid-Atlantic as well as their appointed managers in order to achieve the purposes of the joint venture. (Doc. 1, Ex. A ¶ 23). Second State agreed to apply for land development approvals, obtain construction financing, and engage an architect to construct the Hotel using building plans and specifications approved by Mid-Atlantic. (Id. ¶¶ 22-24). Mid-Atlantic, on the other hand, had the responsibility to franchise and select the management of the Hotel. (Id. ¶ 23). To date, PJ 13 has purchased the real property using Mid-Atlantic's initial contribution, but Plaintiffs have not obtained financing or commenced construction on the Hotel. (Doc. 8 at 2).

### D. Procedural History

On February 11, 2014, Plaintiffs filed a complaint against Mid-Atlantic in the Franklin County Court of Common Pleas, seeking a declaratory judgment on their rights and obligations as a result of the failure to develop the Hotel as set forth in the PJ 13 Operating Agreement. (Doc. 1, Ex. A). Specifically, Plaintiffs request a judicial declaration that, *inter alia*, (1) neither Washabaugh nor Second State is a guarantor of the assigned tasks in the Operating Agreement, (2) Plaintiffs did not breach the Operating Agreement, and (3) Plaintiffs did not violate any duty owed to Mid-Atlantic. (Id. at 10-12). On March 10, 2014, Mid-Atlantic removed the instant action to federal court and filed a motion to dismiss PJ 13 as a dispensable party pursuant to Federal Rules of Civil Procedure 19(b) and 21. (Docs. 1, 2). Mid-Atlantic contends that Second State and Washabaugh improperly joined PJ 13 as a plaintiff solely to destroy complete diversity between Plaintiffs and Mid-Atlantic

and prevent removal to federal court. (Doc. 8 at 3). Plaintiffs respond that PJ 13 is an indispensable party because PJ 13 is also a party to the Operating Agreement whose rights would be affected by a declaratory judgment. (Doc. 9 at 7-14). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Under Federal Rule of Civil Procedure 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. The Supreme Court has established that Rule 21 grants federal courts the authority to dismiss a non-diverse party who is dispensable in order to maintain subject-matter jurisdiction. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989); see also Horn v. Lockhart, 84 U.S. 570, 579 (17 Wall.) (1873) ("[T]he question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether . . . they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court should be retained and the suit dismissed as to them."); Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 421 (3d Cir. 2010). However, the court must exercise its authority sparingly and "carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." Newman-Green, 490 U.S. at 837-38.

Federal Rule of Civil Procedure 19(b) promulgates the considerations for assessing whether or not a party is dispensable to the action. See FED. R. CIV. P. 19(b); see also Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102,

5

107 (1968); Shetter v. Amerada Hess Corp., 14 F.3d 934, 937-38 (3d Cir. 1994). The party that bears the burden of proving subject-matter jurisdiction[1] must also show that a non-diverse party is dispensable. Enza, Inc. v. We The People, Inc., 838 F. Supp. 975, 978 (E.D. Pa. 1993). If the non-diverse party is indispensable, the court may not dismiss such party and instead must dismiss the entire action for lack of subject-matter jurisdiction. Id. at 835; Enza, 838 F. Supp. at 977-78.

### III. Discussion

The sole issue before the court is whether PJ 13 is a dispensable party, thereby permitting the court's exercise of diversity jurisdiction over the instant action. To establish diversity jurisdiction, Mid-Atlantic must demonstrate that the instant action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332(a). In cases with multiple plaintiffs or defendants, complete diversity requires that no plaintiff be a citizen of the same state as any defendant. Zambelli, 593 F.3d at 419 (citing Exxon Mobil Corp v. Allapattah Servs. Inc., 545 U.S. 546, 553 (2005); Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 148 (3d Cir. 2009)).

In the case *sub judice*, Second State and Washabaugh are citizens of Pennsylvania, whereas Mid-Atlantic is a Minnesota limited liability company with

---

[1] When a party removes an action to federal court, the removing party bears the burden of proving subject-matter jurisdiction. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993); Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). Hence, Mid-Atlantic must establish that PJ 13 is a dispensable party.

its principal place of business in Minnesota. (Doc. 1, Ex. A ¶¶ 3-4, 6). The Third Circuit has established that, for purposes of diversity jurisdiction, a limited liability company is a citizen of each state in which its members are citizens. Zambelli, 593 F.3d at 418-20. When a member is another limited liability company, "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the [limited liability company]." Id. at 420 (quoting Hart v. Terminex Int'l, 336 F.3d 541, 543 (7th Cir. 2003) (internal quotation marks omitted)). Mid-Atlantic's sole member is Northcott Hospitality, LLC, a Minnesota limited liability company, whose members are three separate trusts. (Doc. 8 at 3). The citizenship of a trust is generally determined by the citizenship of its trustees. Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 464-66 (1980); Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192, 200-01 (3d Cir. 2007). According to Mid-Atlantic, none of the current trustees of the three member trusts are residents of Pennsylvania. (Doc. 8 at 3). Thus, complete diversity exists between Second State and Washabaugh as plaintiffs and Mid-Atlantic as defendant.

The court notes, however, that the citizenship rule for limited liability companies effectively precludes diversity jurisdiction over any case between a limited liability company and its members. Here, PJ 13 is a Pennsylvania limited liability company, whose sole members are Second State and Mid-Atlantic. (Doc. 1, Ex. A ¶¶ 5, 16). PJ 13 is therefore a citizen of each state in which Second State and

Mid-Atlantic are citizens and its presence as a party to the matter *sub judice* defeats complete diversity.

"An indispensable party is one who not only has an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." Enza, 838 F. Supp. at 978 (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1011 (3d Cir. 1987) (internal quotation marks omitted)); see also Zambelli, 592 F.3d at 421.  Rule 19(b) sets forth four factors that are "the most important considerations" in determining whether or not a party is dispensable. Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 319 (3d Cir. 2007) (quoting Gardiner v. V.I. Water & Power Auth., 145 F.3d 635, 640 (3d Cir. 1998)).  These factors are: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; (2) "the extent to which any prejudice could be lessened or avoided" by protective provisions in the judgment, shaping the relief, or other measures; (3) "whether a judgment rendered in the person's absence would be adequate"; and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder." FED. R. CIV. P. 19(b).

Mid-Atlantic asserts that PJ 13 is a dispensable party because the gravamen of the complaint is the joint venture relationship between Second State and Mid-Atlantic. (Doc. 8 at 6-7).  According to Mid-Atlantic, PJ 13 is merely the vehicle

through which Second State and Mid-Atlantic intended to implement the joint venture. (Id.) The complaint does not request relief on behalf of PJ 13; rather, it seeks a declaratory judgment on PJ 13's Operating Agreement. (Id.) In contrast, Plaintiffs contend that PJ 13 is an indispensable party because PJ 13 is a party to the Operating Agreement and therefore has an important interest in any declaratory judgment on the terms of the Operating Agreement. (Doc. 9 at 7-8, 12).

Upon consideration of each of the Rule 19(b) factors, the court concludes that PJ 13 is a dispensable party in this case. Turning to the first factor, the parties do not dispute that PJ 13 has an interest in its own Operating Agreement. That PJ 13 is a party to the Operating Agreement does not, however, mandate a finding that it is indispensable. The court must carefully consider whether there is an independent basis of liability asserted by or against PJ 13. See City of Harrisburg v. Int'l Surplus Lines Ins. Co., 596 F. Supp. 954, 957 (M.D. Pa. 1984), aff'd, 770 F.2d 1067 (3d Cir. 1985) (holding that agent who sold insurance policy is not an indispensable party because "[n]o independent basis of liability is asserted against it" and the remaining parties may obtain complete relief without agent's presence and otherwise would not suffer any prejudice).

After reviewing the complaint and the Operating Agreement, the court finds that, in the absence of PJ 13, it may accord complete relief without causing prejudice to PJ 13 or the other parties. In this case, Second State and Mid-Atlantic dispute only the rights and obligations vis-à-vis each other and their appointed managers, not any rights or obligations of PJ 13. Notably, Plaintiffs include only a

general request for declaratory judgment that PJ 13 did not violate any duty owed to Mid-Atlantic and that PJ 13 did not breach Section 5.2.6 of the Operating Agreement by failing to enter into the "All in Contract." (See Doc. 1, Ex. A at 10-12). Section 5 of the Operating Agreement, in which the parties sets forth the terms of the joint venture, reveals that PJ 13 does not owe any duties to Mid-Atlantic. (See Doc. 8-2, Ex. B at 16-23). For example, Section 5.2.6 requires the appointed managers to *cause* PJ 13 to enter into the "All in Contract" with Second State. (Id. at 19-20). The PJ 13 Operating Agreement does not require PJ 13 itself to take any action with respect to the development and construction of the Hotel. (See id. at 16-23).

Plaintiffs contend that the possibility of prejudice still exists because Mid-Atlantic may subject PJ 13 to duplicative claims in another forum and create a risk of inconsistent outcomes. (Doc. 9 at 8-9, 12). According to Plaintiffs, Mid-Atlantic has previously threatened to bring suit against PJ 13 and even included a draft complaint to be filed in the First Judicial District of the State of Minnesota, Carver County. (Id. at 8; see Doc. 9-1, Ex. A). Plaintiffs argue that, based upon the threat of litigation, Mid-Atlantic acknowledges that PJ 13 is not only an adverse party, but that PJ 13 is a necessary and indispensable party. (Id. at 8-9). This argument is unpersuasive.

Under Rule 19, Plaintiffs must show that "some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing

10

the effect of prior judgments." Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 409 (3d Cir. 1993). Simply put, the court may not dismiss a non-diverse party when the effect of its judgment on such party is direct and immediate under the rules of claim or issue preclusion. Id. at 407-09.

Plaintiffs' conclusory assertion that PJ 13 will face a second lawsuit on the same issues is insufficient to meet this burden. (See Doc. 9 at 12). Based on the current record, there is no indication that Mid-Atlantic has filed any claims against PJ 13, or that Mid-Atlantic has any basis for asserting such claims. The alleged prejudicial effect of a declaratory judgment based upon speculation of some future claim falls well short of establishing indispensability within the ambit of Rule 19(b).

The court must also consider whether the other parties would be subject to the risk of multiple or inconsistent obligations. As the court noted above, Mid-Atlantic has not yet filed any claim against PJ 13, nor have the Plaintiffs established the basis for such a claim. The possibility of an inconsistent ruling is therefore also pure speculation. The court concludes that there is no evidence in the existing record showing prejudice to PJ 13 or the other parties. Moreover, to the extent PJ 13 or Mid-Atlantic would attempt to initiate claims against each other, the court may lessen any prejudice by severing the claims. See FED. R. CIV. P. 21 ("The court may also sever any claim against a party.").[2] Thus, the second factor also supports a

---

[2] A review of PJ 13 Operating Agreement indicates that the rights and obligations between PJ 13 and Mid-Atlantic are separate and independent of the rights and obligations of Second State and Washabaugh.

11

finding that PJ 13 is a dispensable party whose dismissal will not cause prejudice to any party.

The third factor under Rule 19(b) requires the court to determine whether a judgment rendered in the absence of the non-diverse party will be adequate. The Third Circuit has interpreted the third factor to include two main considerations: (1) whether the requested relief will provide an adequate remedy for the plaintiff, and (2) whether the action satisfies the "public stake in settling disputes by wholes, whenever possible." Gen. Refractories Co., 500 F.3d at 320-21 (quoting Patterson, 390 U.S. at 111). As previously discussed, the complaint seeks a declaratory judgment only as to the rights and obligations of Second State and its appointed manager, Washabaugh, under the PJ 13 Operating Agreement. This request for relief is not predicated on any similar rights or obligations of PJ 13. Accordingly, the court finds that the requested relief will provide Second State and Washabaugh with an adequate remedy and resolve the entire dispute.

The fourth and final factor focuses on whether Mid-Atlantic would have an adequate remedy if the court finds that PJ 13 is an indispensable party to this case. If the court determines that PJ 13 is indispensable, the court would simply be required to remand this action to state court. (See Doc. 9 at 12). The court notes that the Franklin County Court of Common Pleas is an available and adequate forum for all of the parties.

finding that PJ 13 is a dispensable party whose dismissal will not cause prejudice to any party.

The third factor under Rule 19(b) requires the court to determine whether a judgment rendered in the absence of the non-diverse party will be adequate. The Third Circuit has interpreted the third factor to include two main considerations: (1) whether the requested relief will provide an adequate remedy for the plaintiff, and (2) whether the action satisfies the "public stake in settling disputes by wholes, whenever possible." Gen. Refractories Co., 500 F.3d at 320-21 (quoting Patterson, 390 U.S. at 111). As previously discussed, the complaint seeks a declaratory judgment only as to the rights and obligations of Second State and its appointed manager, Washabaugh, under the PJ 13 Operating Agreement. This request for relief is not predicated on any similar rights or obligations of PJ 13. Accordingly, the court finds that the requested relief will provide Second State and Washabaugh with an adequate remedy and resolve the entire dispute.

The fourth and final factor focuses on whether Mid-Atlantic would have an adequate remedy if the court finds that PJ 13 is an indispensable party to this case. If the court determines that PJ 13 is indispensable, the court would simply be required to remand this action to state court. (See Doc. 9 at 12). The court notes that the Franklin County Court of Common Pleas is an available and adequate forum for all of the parties.

After careful balancing of the Rule 19(b) factors, the court concludes that PJ 13 is a dispensable party and that the court may dismiss PJ 13 to establish diversity jurisdiction over the instant action.[3]

## IV. Conclusion

For all of the foregoing reasons, the court will grant Mid-Atlantic's motion to dismiss PJ 13 as a dispensable party pursuant to Federal Rules of Civil Procedure 19(b) and 21. (Doc. 2).

An appropriate order shall issue.

                /S/ CHRISTOPHER C. CONNER
                Christopher C. Conner, Chief Judge
                United States District Court
                Middle District of Pennsylvania

Dated:       August 18, 2014

---

[3] Because the court will dismiss PJ 13 as a dispensable party, the court need not address the parties' additional arguments that Plaintiffs improperly joined PJ 13 in contravention of Pennsylvania's Limited Liability Company Law of 1994, 14 Pa. Cons. Stat. §§ 8901 *et seq.*, and Section 5.1 of the PJ 13 Operating Agreement. (See Doc. 8 at 7-8; Doc. 9 at 13-14; Doc. 11 at 4-7).